# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEIGH ANN BILLINGS,

   *Plaintiff,*

  vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

   *Defendant.*

Case No. 13-2446-EFM

## MEMORANDUM AND ORDER

   Plaintiff Leigh Ann Billings seeks review of a final decision by Defendant Carolyn Colvin, the Commissioner of Social Security, denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively, and award of attorney's fees and costs.  Billings alleges that the Commissioner's decision should be reversed and remanded because the Administrative Law Judge ("ALJ") failed to follow administrative guidelines and regulations for obtaining and weighing medical expert opinions.  Specifically, Billings opposes the ALJ's decision to reject her treating psychiatrist's opinion.  The result, according to Billings, is more error—an improper determination of Billings' mental impairments, her residual functioning capacity, and her ability to obtain gainful employment.  Upon review, the Court finds that the ALJ properly evaluated the medical opinion

of Billings' treating psychiatrist and supported his determinations with substantial evidence.  As such, the decision of the Commissioner is affirmed.

## I.        Factual and Procedural Background

Leigh Ann Billings was born February 15, 1980.  Billings alleges that her disability began December 7, 2007.  The agency denied Billings' application initially and on reconsideration.  Billings then asked for a hearing before an administrative law judge.

The ALJ held a hearing on December 20, 2011.  At that hearing, Billings testified about her medical conditions, including diagnoses for bipolar disorder, borderline personality disorder, and anxiety disorder.  A vocational expert also testified as to Billings' employment prospects. Under the conditions described by the ALJ to hypothetically represent the limitations of Billings' disability, Billings would be able to perform the requirements of sedentary, unskilled work.  The ALJ's hypothetical disregarded the limitations opined by Billings' treating psychiatrist that would "preclude all work in the national economy."[1]

The ALJ issued his written opinion on May 22, 2012.  At step one of the evaluation process, he found that Billings had not engaged in substantial gainful activity since her alleged disability onset date.  At step two, he determined that Billings' severe impairments include: obesity, lower back pain, asthma, rectovaginal fistula, borderline personality disorder, anxiety, and alcohol abuse.  But he excluded Billings' diagnosis for bipolar disorder.  He concluded that "the weight of the evidence" supported a nonexamining medical expert's opinion that Billings' medical records do not justify a diagnosis of bipolar disorder.[2]  At step three, he found that Billings' impairments do not meet or medically equal the disability impairment criteria.

_____

[1] December 2011 Oral Hearing, Doc. 8-1, p. 88.

[2] ALJ Decision, Doc. 8-1, p. 15.

Specifically, he determined that Billings did not suffer the marked limitation in activities of daily living; social functioning; concentration, persistence, or pace; or the repeated episodes of decompensation necessary to establish disability.  At steps four and five, he determined that, despite impairments that preclude Billings from returning to her previous work, she possesses sufficient residual functional capacity to engage in sedentary work that is "limited to simple, unskilled work with no contact with the general public and only occasional interaction with coworkers and supervisors.  In addition, she should have no more than moderate exposure to pulmonary irritants and normal access to restroom facilities."[3]  The ALJ therefore concluded that Billings had not been under a disability since December 7, 2007, through the date of his decision.

The Social Security Administration's Appeals Council denied Billings' request for review in July 2013.  Billings timely requested judicial review.  Because Billings exhausted all administrative remedies available to her, the Commissioner's decision denying Billings' application for benefits is now final and this Court has jurisdiction to review the decision.

## II.      Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act").[4]  The Act provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[5]  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[6]  "Substantial evidence is more

---

[3] ALJ Decision, Doc. 8-1, p. 19.

[4] 42 U.S.C. § 405(g).

[5] *Id.*

[6] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[7]  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[8]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[9]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [her] age, education, and work experience."[10]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[11]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[12]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3)

---

[7] *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[8] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[9] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

[11] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

[12] *Barkley*, 2010 WL 3001753, at *2.

whether the severity of those severe impairments meets or equals a designated list of impairments.[13]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[14]

Upon assessing the claimant's residual functioning capacity, the Commissioner moves on to steps four and five.  These steps required the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[15]  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[16]  The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other gainful work in the national economy.[17]

### III.    Analysis

Billings asserts error resulting from the substantive consequences of two procedural deficiencies.  First, Billings claims that the ALJ failed to follow administrative guidelines for obtaining medical expert testimony.  Second, Billings claims that the ALJ ignored the regulatory procedure for weighing a treating source opinion.  These procedural errors, according to Billings,

---

[13] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[14] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545 and 416.920(e), 416.945.

[15] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[16] *Lax*, 489 F.3d at 1084.

[17] *Id.*

produced determinations of her residual functional capacity and her ability to obtain gainful employment that lack the support of substantial evidence in the record. The Commissioner contends that the ALJ properly obtained and considered the medical opinion evidence and that the ALJ's resulting conclusions are properly supported by substantial evidence in the record.

## A. Administrative Guidelines

Billings' first allegation of procedure-based error suggests a failure to observe two provisions of the Hearings, Appeals, and Litigation Law Manual ("HALLEX"). The first provision directs the ALJ to provide a medical expert with "relevant evidence that will assist" him in providing his opinion.[18] Billings argues that the ALJ failed to provide medical expert Dr. Mark Scher with certain medical records and a statement from one of her former employers. The second provision instructs the ALJ to discuss certain matters on the record before a medical expert testifies at a hearing.[19] These matters—which Billings claims the ALJ omitted from the hearing involving Dr. Scher—include a summary of "the opening statement or relevant testimony on the record if the [medical expert] was not present" and colloquy to "ensure on the record that the [medical expert] has examined all medical and other evidence of record."[20] The Commissioner counters that Dr. Scher's interrogatory response and the references to that response in the ALJ's decision demonstrate the ALJ's compliance.

The Court need not decide this issue of the ALJ's compliance with HALLEX. As Billings points out in her brief, this Court has determined HALLEX generally to be non-

---

[18] HALLEX I-2-5-38(C), 1994 WL 637373 (S.S.A.).

[19] HALLEX I-2-5-39(A), 1994 WL 637374 (S.S.A.).

[20] *Id.*; *see also* ALJ Decision, Doc. 15, pp. 39–40.

binding.[21]   Billings argues, however, that the ALJ's "responsibility to develop an adequate record" obligated him to satisfy the demands of HALLEX's provisions for obtaining medical expert testimony.[22]   The Court disagrees.   HALLEX provisions are enforceable only to the extent that they restate an administrative regulation.[23]   Here, the provisions "go[] beyond the regulations,"[24] providing mere "guidance for processing and adjudicating claims."[25]   As such, the Court concludes that HALLEX provisions I-2-5-38(C) and I-2-5-39(A) "do not have the force of law, are not binding on the [Commissioner], and do not provide a basis for the Court to rule."[26]

Any failure by the ALJ to comply with HALLEX provisions, moreover, did not impair the adequacy of the record.   The duty to develop an adequate record originates from the rule that, at a hearing, "the administrative law judge look[] fully into the issues."[27]   Generally, this means that the ALJ has a duty to obtain "pertinent, available medical records" concerning "substantial" issues raised by the claimant that are material to the ALJ's disability determination.[28]   The obligation also imposes a duty of inquiry, "requiring the decision maker 'to inform himself about

---

[21] *See McCoy v. Barnhart*, 309 F. Supp.2d 1281, 1284–85 (D. Kan. 2004).

[22] Plaintiff's Brief In Support of Reversal, Doc. 15, p. 39 (citing *Hawkins v. Charter*, 113 F.3d 1162, 1164 (10th Cir. 1997)).

[23] *McCoy*, 309 F. Supp.2d at 1284–85.

[24] *Id.* at 1284.

[25] HALLEX I-1-0-1, 2005 WL 1863821 (S.S.A.).

[26] *McCoy*, 309 F. Supp.2d at 1285; *see also Schweiker v. Hansen,* 450 U.S. 785, 789 (1981) (finding that the 13-volume Claims Manual is a handbook for use by Social Security employees and has no legal force and does not bind the Social Security Administration); *Moore v. Apfel,* 216 F.3d 864, 868–69 (9th Cir. 2000) (characterizing HALLEX manual as strictly an internal document).

[27] 20 C.F.R. §§ 404.944 and 416.1444; *see also Hawkins*, 113 F.3d at 1164.

[28] *Hawkins*, 113 F.3d at 1167–68.

facts relevant to his decision and to learn the claimant's own version of those facts.' "[29]   Overall, the duty operates to ensure that the ALJ's determination is based on a sufficient record of medical evidence.   Billings does not identify for the Court the exact inadequacy created by the ALJ's alleged failure to adhere to HALLEX's provisions for obtaining medical expert testimony. And, as discussed below, the Court finds the record adequately developed to provide substantial evidence to support the ALJ's disability determination.   Thus, the Court dismisses Billings' creative effort to recast non-binding HALLEX instructions as a binding benchmark for measuring the adequacy of the record.

## B.  Treating Psychiatrist's Opinion

Billings' second allegation of procedure-based error accuses the ALJ of improperly evaluating the opinion of her treating psychiatrist, Dr. Danielle Skirchak.   To perform a proper evaluation of a treating source opinion, the ALJ must give good reasons in the notice of decision for the weight assigned to a treating doctor's opinion.[30]   Generally, the ALJ should "give more weight to opinions from [claimant's] treating sources."[31]

To determine the exact weight to assign a treating source's opinion, the ALJ must follow a two-step inquiry.[32]   At the first step, the ALJ must decide whether to afford the opinion controlling weight.   The ALJ will give controlling weight to a treating source opinion about the nature and severity of impairment only if the opinion is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial

---

[29] *Id.* at 1164 (quoting *Heckler v. Campbell*, 461 U.S. 471 n. 1 (1983)).

[30] 20 C.F.R. §§ 404.1527(c) and 416.927(c); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[31] 20 C.F.R. §§ 404.1527(c) and 416.927(c).

[32] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

evidence in claimant's case record.[33]   An opinion that is deficient in either support or consistency with other evidence is not entitled to controlling weight.[34]   But such a finding does not mean that the opinion automatically should be rejected.[35]   Even if it is not given controlling weight, a treating opinion is still entitled to deference.[36]   As such, finding that a treating source's opinion is deficient enough to be not given controlling weight only raises the question of how much weight to give the opinion, but it does not answer the question.[37]

To determine "whether the opinion should be rejected altogether or assigned some lesser weight," the ALJ must proceed to the second step of the evaluation process.[38]   At the second step, the ALJ must consider the factors specified 20 C.F.R. §§ 404.1527(c) and 416.927(c) for weighing medical opinions.[39]   These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[40]

---

[33] 20 C.F.R. §§ 404.1527(c) and 416.927(c).

[34] *Krauser*, 638 F.3d at 1330.

[35] *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4).

[36] *Hackett v. Barnhart*, 395 F.3d 1168, 1173–74 (10th Cir. 2005).

[37] *Krauser*, 638 F.3d at 1330–31.

[38] *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

[39] *Id.*

[40] *Krauser*, 638 F.3d at 1331; *see also* 20 C.F.R. §§ 404.1527(c)(1)–(6) and 416.927(c)(1)–(6).

Though the ALJ is not required to discuss all six of these regulatory factors,[41] the ALJ must "give good reasons, tied to the factors specified in the cited regulations . . . , for the weight assigned" a treating source opinion.[42]  This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."[43]  And if the ALJ rejects a treating source's opinion, "he must articulate specific, legitimate reasons for his decision."[44]  If the ALJ fails to make clear either the weight given or the reasons supporting that weight, remand is required.[45]

Billings challenges the ALJ's decision not to afford controlling weight to Dr. Skirchak's opinion.  Specifically, Billings argues that the ALJ failed to properly evaluate Dr. Skirchak's opinion under the applicable regulations and that substantial evidence does not support the ALJ's findings.

## 1.  The ALJ Properly Concluded that Dr. Skirchak's Opinion is Not Entitled to Controlling Weight.

The Court first considers whether the ALJ properly analyzed Dr. Skirchak's opinion to determine if it was entitled to controlling weight.  Dr. Skirchak presented her opinion of Billings' alleged disability in a "Mental Impairment Questionnaire" form organized around the regulatory listing criteria for determining disability by mental disorder.[46]  The questionnaire includes a

---

[41] *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

[42] *Krauser*, 638 F.3d at 1330 (internal citation omitted).

[43] *Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)).

[44] *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quotation omitted).

[45] *Krauser*, 638 F.3d at 1330.

[46] *See* 20 C.F.R. § 404, Subpart P, Appendix 1, at 12.00.

DSM-IV multiaxial assessment of Billings' mental health which lists, among other diagnoses, bipolar I disorder.  Dr. Skirchak indicated Billings' symptoms to include twenty of the thirty listed:

> poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbance; emotional liability; delusions or hallucinations; recurrent panic attacks; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; oddities of thought, perception, speech, or behavior; perceptual disturbances; social withdrawal or isolation; blunt, flat[,] or inappropriate affect; decreased energy; manic syndrome; generalized persistent anxiety; and hostility and irritability.[47]

Dr. Skirchak indicated that Billings' mental conditions afflict her with marked limitations in all functional areas—activities of daily living; social functioning; concentration, persistence, or pace—and with repeated, extended episodes of decompensation.  Dr. Skirchak noted that Billings' struggle "to remain stable" would make working at a regular job on a sustained basis difficult.  If considered alone and entitled to controlling weight, these and Dr. Skirchak's other responses on the form could support a determination of disability.

The ALJ, however, concluded that Dr. Skirchak's opinion is not entitled to controlling weight.  The ALJ considered Dr. Skirchak's opinion for both support and consistency.  The ALJ identified the absence of accepted medical tests to support both Billings' bipolar disorder diagnosis and the severity of her condition.  Considering the testimony of a psychiatry board certified medical expert, Dr. Mark Scher, the ALJ noted that Billings' bipolar "diagnosis has been carried [over] since [Billings] was 13 years old without any documentation of symptoms (objective or subjective) sufficient to make this diagnosis."[48]  The ALJ later confirmed that "no

---

[47] Mental Impairment Questionnaire (26F), Doc. 8-1, p. 1052.

[48] ALJ Decision, Doc. 8-1, p. 14.

objective medical test reveals the claimant has any condition that would present the severity of the symptoms alleged."[49]

The ALJ also evaluated Dr. Skirchak's opinion for consistency.  When considering Billings' bipolar diagnosis, the ALJ determined that "the weight of the evidence" supported the conclusion that Billings' medical records do not justify a diagnosis of bipolar disorder.[50]  The ALJ identified as well-supported the observation of Dr. Scher that the twenty symptoms Dr. Skirchak identifies on the "Mental Impairment Questionnaire" form are either unreported or inconsistently documented in Dr. Skirchak's treatment notes.[51]  The ALJ further explained the lack of support for Dr. Skirchak's opinion, stating:

> As for Dr. Skirchak's opinion, the undersigned finds that it is not fully supported by her treatment records and is internally inconsistent as well.  Dr. Skirchak has consistently assessed the claimant's global assessment of functioning as 50, which is inconsistent with the severity Dr. Skirchak contends. As Dr. Scher pointed out, one would expect an individual with all of the symptoms and limitations documented in Dr. Skirchak's statement to be much more functionally limited than the claimant has shown herself to be.  Even the claimant reported she writes poems, reads daily, does not need special reminders to take care of grooming or take medication, is able to manage her own finances, and can follow spoken instructions "okay" and written instructions better than verbal. . . .She is able to take her children to school, work, bathe them, feed them, do household chores, pick them up from school, read to them, work on their homework, and cook dinner.  She was also able to go to school from 11 am to 2:50 pm three days a week before her third pregnancy.[52]

---

[49] *Id.* at 24.

[50] *Id.* at 15.

[51] *Id.* at 17 ("When comparing the signs and symptoms of Dr. Skirchak's medical source statement to the signs and symptoms documented in her treatment notes, Dr. Scher testified that there are symptoms that have occurred in some point in time, although some are not accurate at all, but they have not all existed on any consistent basis during her treatment of the claimant.").

[52] *Id.* at 18 (citations to record omitted).

Therefore, the ALJ declined to give Dr. Skirchak's opinion controlling weight because he found Dr. Skirchak's responses in the Medical Impairment Questionnaire to be without the support of medically acceptable tests, "internally inconsistent" with Dr. Skirchak's own medical records, and inconsistent with the balance of the administrative record.[53]  Having made these findings, the ALJ sufficiently explained that Dr. Skirchak's opinion is not entitled to controlling weight.

## 2.  The ALJ Properly Rejected Dr. Skirchak's Opinion.

Next, the Court considers whether the ALJ applied proper legal standards in effectively rejecting Dr. Skirchak's opinion.  The ALJ does not specify the exact weight he actually gave to Dr. Skirchak's opinion.  But it is readily apparent from the ALJ's contrary conclusions that he effectively rejected Dr. Skirchak's opinion regarding Billings' bipolar diagnosis and the severity of her functional limitations.  Because the Court can ascertain the weight given, the failure to specify the exact weight assigned Dr. Skirchak's opinion does not preclude the Court from conducting a meaningful review of the ALJ's decision.[54]

Billings contends that the ALJ failed to discuss all of the relevant factors when considering what weight to give Dr. Skirchak's opinion, and instead "[relied] heavily on the opinions expressed by Dr. Scher, who neither treated, nor examined" Billings.[55]  The Court disagrees.  The ALJ addressed the length of the treatment relationship, frequency of examination, and Dr. Skirchak's specialization in the field of mental illness by introducing Dr. Skirchak as

---

[53] *Id.*

[54] *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (rejecting request for reversal based on ALJ's failure to expressly state weight given opinion because the court could "tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion."); *Kruse v. Astrue*, 436 Fed. Appx. 879, 883 (10th Cir. 2011) (concluding that ALJ's failure to "state a specific weight he attached to [treating source's opinion]" did not preclude meaningful review because weight could be implied from ALJ's discussion of 20 C.F.R. § 416.927 factors).

[55] Plaintiff's Brief In Support of Reversal, Doc. 15, p. 39.

-13-

Billings' "treating psychiatrist . . . since at least July 2008 on a regular basis."[56]  The ALJ's discussion of Billings' medical history during his residual functional capacity analysis demonstrates his comprehensive review of the nature and extent of Dr. Skirchak's treatment relationship with Billings.[57]  As previously described, the ALJ evaluated the supportability and consistency of Dr. Skirchak's opinion.[58]  An ALJ's reasons for declining to give controlling weight to a treating source's opinion also may support giving the opinion diminished weight.[59] And even Billings acknowledges that the ALJ discussed "that Dr. Skirchak's opinions are not fully supported by her treatment records and were internally inconsistent."[60]  Therefore, the Court finds that the ALJ properly followed regulatory procedure to identify specific, legitimate reasons for his decision to effectively reject Dr. Skirchak's opinion.

As for Billings' claim that the ALJ "erred in relying upon the opinion of . . . Dr. Scher, a non-treating, non-examining physician rather than the well supported opinion of Dr. Skirchak," the Court finds no error.[61]  If a treating source's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other doctors' reports to see if they outweigh the treating source's report, not the other way around.[62]  The ALJ's examination should consider the

---

[56] ALJ Decision, Doc. 8-1, p. 16; *see also* 20 C.F.R. §§ 404.1527(c)(2)(i), (5) and 416.927(c)(2)(i), (5).

[57] ALJ Decision, Doc. 8-1, pp. 19–24; *see also* 20 C.F.R. §§ 404.1527(c)(2)(ii) and 416.927(c)(2)(ii).

[58] *See* 20 C.F.R. §§ 404.1527(c)(3), (4) and 416.927(c)(3), (4).

[59] *See Payton v. Astrue*, 480 F. App'x 465, 469 (10th Cir. 2012) (noting that the treating physician's opinion lacked consistency with the record as a whole and was contradicted by his own treatment notes); *Armijo v. Astrue*, 385 F. App'x 789, 795–96 (10th Cir. 2010) (noting that supportability and consistency factors had significant bearing on ALJ's finding that treating physician's opinion was entitled to little weight).

[60] Plaintiff's Brief In Support of Reversal, Doc. 15, p. 45.

[61]*Id.*

[62] *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

relevant of the six previously identified factors for examining medical opinions under 20 C.F.R. §§ 404.1527 and 416.927.[63]   These factors include: "the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the . . . psychological consultant provides, and any other factors relevant to the weighing of the opinions."[64]   The ALJ's examination should also indicate the weight given to the consultant's opinion.[65]

Here, the ALJ assigned "considerable weight" to Dr. Scher's opinion.[66]   The ALJ introduced Dr. Scher as "an independent and impartial medical expert Board Certified in psychiatry and neurology"[67] that "does not have a treating relationship with the claimant."[68]   The ALJ indicated that Dr. Scher's position as a non-treating consultant enabled him to objectively review the record for medical evidence to support Billings' claimed impairments, symptoms, and prognosis.[69]   The ALJ explained Dr. Scher's findings in great detail and documented the "persuasive support from the record for [Dr. Scher's] opinion."[70]   For example, Dr. Scher opines that Billings is "histrionic and exaggerates her symptoms."[71]   In support, the ALJ cites treatment notes from one of Billings' attending psychiatrists that indicate "a tendency to overly report

---

[63] 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii).

[64] 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii).

[65] 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii).

[66] ALJ Decision, Doc. 8-1, p. 18.

[67] *Id.* at 16.

[68] *Id.* at 15.

[69] *Id.*

[70] *Id.* at 18.

[71] *Id.* at 16.

psychopathology."[72]   To support further Dr. Scher's opinion that "claimant's self-reports are unreliable," the ALJ offers Dr. Scher's observation from the record that "claimant reports drinking a fifth of liquor on the weekends but denies any drugs or alcohol since her teenage years."[73]   Dr. Scher also discounted the alleged severity of Billings' impairments based on Billings recorded ability to attend school and manage her home life.[74]   These and many other passages from the ALJ's decision convince the Court that the ALJ correctly observed the regulatory procedure for weighing Dr. Scher's opinion.

The Court also disagrees with Billings' assertion that a different result is required because the ALJ impermissibly adopted Dr. Scher's "bias rationale" as a basis for discounting Dr. Skirchak's opinion.[75]   Dr. Scher partially discredited Dr. Skirchak's opinion as being a well-intended generosity designed to improve a sympathetic patient's chances of receiving disability benefits.[76]   The ALJ included Dr. Scher's estimation while reviewing the entirety of Dr. Scher's testimony.   But the Court cannot ascertain—and Billings does not provide—any evidence from the record that, after discussing all of Dr. Scher's testimony, the ALJ endorsed Dr. Scher's

---

[72] *Id.* Made during Billings' May 2008 hospitalization for suicidal ideation, the treatment notes report: "In summary, the patient endorsed a variety of mood and anxiety symptoms; however, per psychometric and behavioral data, she appears to have a tendency to overly report psychopathology.  This appeared, to strongly be the case per the MMPI too."  Inpatient Hospital Records (1F), Doc. 8-1, p. 378.

[73] ALJ Decision, Doc. 8-1, p. 16.  *Compare* Drug and Alcohol Questionnaire (7E), Doc. 8-1, p. 327 *with* JCMH Treatment Records (5F), Doc 8-1, p. 444.

[74] The ALJ explained, "[Dr. Scher] noted that [Billings] was able to go to school, her grades were okay, she was motivated to learn and improve her situation, she gets her kids ready for school, clothes the kids, helps them with homework, and makes sure they get to their doctor appointments.  [Dr. Scher] further noted [that from] the claimant's ability to manage the job of raising children, one that most would find one of the hardest jobs in life, it is clear that her personality disorder, in and of itself, does not affect her ability to function to the extent alleged."  ALJ Decision, Doc. 8-1, p. 17.

[75] Plaintiff's Brief In Support of Reversal, Doc. 15, p. 46.

[76] April 2012 Oral Hearing, Doc. 8-1, p. 48.

speculative bias-opinion as a basis for rejecting Dr. Skirchak's opinion.  This is not the case, as Billings urges and case law condemns, where an ALJ rejects a treating source's opinion based upon the dismissive "assertion that a treating physician 'naturally advocates' for his patient."[77] As discussed above, the ALJ provided sufficient, non-speculative conclusions that address the regulatory factors for weighing the medical opinions.  The regulations do not—and the Court will not—require more.

### 3.  Substantial Evidence Supports the ALJ's Evaluation of Dr. Skirchak's Opinion.

Billings' remaining arguments amount to an assertion that substantial evidence does not support the ALJ's findings concerning Dr. Skirchak's opinion.  An ALJ's findings may be supported by substantial evidence even if two inconsistent conclusions may be drawn from the evidence.[78]  This Court may not displace the ALJ's choice between two fairly conflicting views.[79]  Here, there is substantial evidence to support the ALJ's specific, legitimate reasons for rejecting Dr. Skirchak's opinion.

First, the ALJ accurately noted at step two that Billings' asserted bipolar diagnosis has been carried over since Billings was thirteen years old without substantial support for the diagnosis.[80]  The diagnosis appears in many of Billings' medical records, including those of Dr. Skirchak.  But the record does not clearly present a medical basis for the bipolar diagnosis that is distinguishable from Billings other mental conditions.  What the record provides are Billings'

---

[77] *Charboneau v. Astrue*, No. 11-CV-547-PJC, 2012 WL 5334748, at *6 (N.D. Okla. Oct. 26, 2012); *see also* Plaintiff's Brief in Support of Reversal, Doc. 15, p. 46.

[78] *Lax*, 489 F.3d at 1084.

[79] *Id.*

[80] Treatment records indicate that Billings received the bipolar diagnosis during her first hospitalization for suicidal ideation at age thirteen.  Inpatient Hospital Records (1F), Doc. 8-1, p. 376.

self-reported symptoms and a history of medication.  Even accepting Billings' ability to accurately and honestly describe her mental condition, Billings' own statements "alone are not enough to establish that there is a . . . mental impairment."[81]  Self-reported symptoms—whether offered directly by Billings or indirectly by Billings' medical records—must be verified by medically acceptable clinical diagnostic techniques.[82]  Though Dr. Skirchak's records occasionally include notes of observable phenomena,[83] the remaining content of her notes amounts to second-hand summaries of Billings' self-reports.[84]  Furthermore, records indicate that although Dr. Skirchak began seeing Billings in July 2008,[85] she did not formally include her diagnosis of bipolar disorder until July 2011,[86] over three years from Billngs' alleged disability onset date and less than one year before the ALJ issued his decision.[87]  From this record, the ALJ could only credit Dr. Scher.  Thus, the ALJ explained that,

> The use of medications for affective instability [bipolar disorder] . . . is
> appropriate according to Dr. Scher, but by themselves do not confirm a

---

[81] 20 C.F.R. §§ 404.1528(a) and 416.928(a).

[82] 20 C.F.R. §§ 404.1528(a) and 416.928(a); *see also* 20 C.F.R. §§ 404.1512(b)(1) and 416.912(b)(1) (defining "evidence" to include "objective medical evidence"—medical signs and laboratory findings).

[83] The regulations authorize the ALJ to consider as evidence "signs."  20 C.F.R. §§ 404.1512(b)(1) and 416.912(b)(1).  Signs must "be shown by observable facts that can be medically described and evaluated" through medically acceptable clinical diagnostic techniques.  20 C.F.R. §§ 404.1528(b) and 416.928(b).

[84] *See e.g.* JCMH Treatment Records (5F), Doc. 8-1, p. 444 (recording Billings' self-reports under section titled "Subjective" and brief observations under "Mental Status Examination").

[85] *See id.* at 454.

[86] *See* JCMH Treatment Records (28F), Doc. 8-1, p. 1115.

[87] To support a finding of disability, the ALJ must be able to conclude that claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable  . . . mental impairment which . . . *has lasted or can be expected to last for a continuous period of not less than 12 months*."  42 U.S.C. § 423(d)(1)(A) (emphasis added).  Dr. Skirchak's late diagnosis and the ambiguity it creates regarding her former treatment notes that list a bipolar diagnosis both complicated the ALJ's ability to make, based on Dr. Skirchak's opinion, the requisite impairment and duration findings to support a determination that Billings' is disabled by means of bipolar disorder.

-18-

diagnosis qualifying under 12.04 [the listing criteria for diagnosing affective disorder as a recognized mental impairment] . . . .  Although the claimant reports mood disturbance, Dr. Scher found no objective evidence that this is persistent or meets the criteria for true affective [bipolar] disorder.[88]

A reasonable mind might accept these findings to support the ALJ's decision to exclude Billings' alleged bipolar diagnosis from her list of severe impairments.[89]

Second, the ALJ appropriately identified at step three the inconsistencies surrounding Dr. Skirchak's opinion.  The ALJ determined that Dr. Skirchak's assessment of Billings' global assessment of functioning (GAF) score contradicts the number and severity of Billings' symptoms.[90]  Dr. Skirchak regularly designates Billings' GAF score as fifty.[91]  But, in the questionnaire she completed on Billings' behalf, she presents Billings' symptoms as extensive and Billings' functional limitations as marked in all areas.  The ALJ found Dr. Skirchak's opinion of Billings' symptoms and limitations too extreme to corroborate the consistently assigned fifty GAF score.  Dr. Scher endorsed this opinion, noting that "an individual with all of the signs and symptoms described [in Dr. Skirchak's questionnaire] would be institutionalized and would not be seen on an outpatient basis."[92]  Dr. Skirchak does not identify the exact symptom(s) or circumstance(s) on which she bases her GAF score determination.  And without

---

[88] ALJ Decision, Doc. 8-1, p. 16.

[89] *See Barkley*, 2010 WL 3001753, at *1 (citing *Castellano*, 26 F.3d at 1028).

[90] The Global Assessment of Functioning (GAF) assigns a numerical score between 0 and 100 to a subjective clinical judgment of the individual's overall functioning level.  The criteria for score assessment considers psychological, social, and occupational functioning, but excludes physical or environmental limitations. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32.

[91] JCMH Treatment Records (18F), Doc. 8-1, pp. 782, 790, 810; JCMH Treatment Records (20F), Doc. 8-1, pp. 852, 857, 860, 861; JCMH Treatment Records (28F), Doc. 8-1, pp. 1072, 1083, 1096, 1107.  A GAF score of 41 to 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34.

[92] ALJ Decision, Doc. 8-1, p. 17.

explanation linking Dr. Skirchak's GAF assessment to specific problems related to Billings' ability to maintain employment, the ALJ could not accept the score itself as evidence of an impairment that seriously interferes with Billings' ability to work.[93]

The ALJ also fairly identified the contradiction between Dr. Skirchak's questionnaire response and her treatment notes. Dr. Skirchak's opinion indicates Billings' symptoms to include twenty of the thirty listed. Billings contends that the "record contains hundreds of pages of treatment notes by Dr. Skirchak and [P]laintiff's therapists chronicling her pervasive symptoms."[94] The ALJ acknowledged these records in his discussion but determined that Dr. Skirchak's opinion improperly overstates the medical evidence in the record. Specifically, the ALJ found the evidence to favor the position that "some [of the symptoms] are not accurate at all" and "they have not all existed on any consistent basis during [Dr. Skirchak's] treatment of the claimant."[95] For example, Dr. Skirchak's opinion describes Billings' symptoms to include: "delusion or hallucinations," "psychomotor agitation or retardation," and "poor memory."[96] Dr. Skirchak's treatment notes, however, consistently deny both hallucinations[97] and abnormal psychomotor activity.[98] The notes also omit entirely any observations regarding memory.[99]

---

[93] *See Whelchel v. Barnhart*, 94 F. App'x 703, 709 (10th Cir. 2004) ("Moreover, plaintiff's GAF score of 47 may indicate problems not necessarily related to her ability to hold a job, *see* DSM-IV-TR at 34, and therefore standing alone, without any further narrative explanation, this rating does not support an impairment seriously interfering with her ability to work.").

[94] Plaintiff's Brief In Support of Reversal, Doc. 15, p. 45.

[95] ALJ Decision, Doc. 8-1, p. 17.

[96] Mental Impairment Questionnaire (26F), Doc. 8-1, p. 1052.

[97] JCMH Treatment Records (5F), Doc. 8-1, pp. 453, 454; JCMH Treatment Records (18F), Doc. 8-1, pp. 781, 789, 795, 808; JCMH Treatment Records (28F), Doc. 8-1, pp. 1071, 1082, 1095, 1106.

[98] JCMH Treatment Records (5F), Doc. 8-1, pp. 447, 450, 452, 453, 454; JCMH Treatment Records (18F), Doc. 8-1, pp. 794, 808; JCMH Treatment Records (20F), Doc. 8-1, pp. 857, 860, 861; JCMH Treatment Records (28F), Doc. 8-1, pp. 1070, 1094, 1105.

Additionally, Dr. Skirchak's treatment reviews present a more optimistic prognosis than that opined in the questionnaire.[100]

The ALJ also determined that documentation of Billings' noncompliance with prescribed treatment undermines Dr. Skirchak's estimation of the number and severity of Billings' symptoms. An ALJ may deny a claimant benefits based upon a finding that claimant failed to comply with prescribed treatment.[101] Here, the ALJ correctly identified that Dr. Skirchak's progress notes "reveal[] that [Billings] has not always been entirely compliant with the prescribed medical care."[102] Dr. Skirchak "strongly advised" Billings to avoid alcohol and drugs because their consumption can "make mood and anxiety problems worse."[103] Nonetheless, Billings disregarded Dr. Skirchak's sobriety instructions.[104] Dr. Skirchak's progress notes also

---

[99] Though Dr. Skirchak makes no observations regarding memory, her treatment notes do routinely indicate linear thought process. JCMH Treatment Records (5F), Doc. 8-1, pp. 444, 447, 450, 452, 453, 454; JCMH Treatment Records (18F), Doc. 8-1, pp. 781, 789, 809; JCMH Treatment Records (20F), Doc. 8-1, pp. 853, 857, 860, 861; JCMH Treatment Records (28F), Doc. 8-1, pp. 1071, 1082, 1095, 1106.

[100] Dr. Skirchak assessed Billings' prognosis in the questionnaire to be "guarded, decompensation periods in past resulting in hospitalizations, SI, psychotic symptoms." JCMH Treatment Records (28F), Doc. 8-1, p. 1054. Her treatment reviews for roughly the same period, however, designate that she "[e]xpect[s] improvement, but anticipate[s] less than normal functioning." *Id.* at 1116, 1121, 1125.

[101] 20 C.F.R. §§ 404.1530 and 416.930; *see also Bales v. Colvin*, 576 F. App'x 792, 796 (10th Cir. 2014) (affirming ALJ decision to give "limited weight" to treating physician's opinion, in part, because "ALJ observed that [claimant's] symptoms improved when she was taking her medications"); *Hackett*, 395 F.3d at 1174 (concluding that ALJ properly rejected treating physician's opinion because, among other reasons, the opinion was "not supported by [the physician's] own records which indicate[d] improvement and stabilization on medications).

[102] ALJ Decision, Doc. 8-1, p. 24.

[103] JCMH Treatment Records (5F), Doc. 8-1, p. 444; *see also* JCMH Treatment Records (18F), Doc. 8-1, pp. 807 ("she discussed cravings to drink alcohol. last marijuana 30 days ago. . . . reminded that she should not be using alcohol with her meds."), 811 ("discussed substance abuse treatment, she declined at this time. warned of serious medical and psychiatric risks of use of alcohol."); JCMH Treatment Records (28F), Doc. 8-1, p. 1108 ("also, her alcohol addiction confounds the situation and can make her [symptoms] worse. discussed dangerousness of alcohol with all her meds").

[104] The extent of Billings' alcohol and marijuana use is unclear because Billings "[i]dentified that she usually doesn't disclose substance abuse/use because of fear of losing custody of her children." JCMH Treatment Records (18F), Doc. 8-1, p. 864.

indicate that when drinking or during pregnancy Billings often refused to take her medication as prescribed.[105] Billings' noncompliance aggravated her symptoms.[106] The ALJ therefore determined that "when the claimant is compliant with recommended treatment her condition improves" sufficiently to permit gainful employment.[107] The Court is satisfied that substantial evidence—including Dr. Skirchak's treatment notes—supports the ALJ's determination.

Finally, the ALJ appropriately concluded that Dr. Skirchak's opinion of Billings' limitations is inconsistent with the balance of the record. The ALJ could not reconcile Dr.

---

Treatment notes, however, document self-reported occasional use of alcohol and marijuana. *See* JCMH Treatment Records (5F), Doc. 8-1, p. 444 ("Drinks alcohol on the weekends . . . Drinks a fifth of whiskey on the weekend, and at first doesn't realize that this is a great amount of alcohol."); JCMH Treatment Records (18F), Doc. 8-1, pp. 807 ("[Billings] discussed cravings to drink alcohol.  last marijuana 30 days ago. . . . reminded that she should not be using alcohol with her meds."), 811 ("discussed substance abuse treatment, [Billings] declined at this time. warned of serious medical and psychiatric risks of use of alcohol."); JCMH Treatment Records (20F), Doc. 8-1, p. 882 ("[Billings was positive for THC."); JCMH Treatment Records (28F), Doc. 8-1, pp. 1018 ("Urine drug screen positive for benzodiazepines and THC."), 1104 ("[Billings] is drinking on the weekends now."), 1108 ("also, her alcohol addiction confounds the situation and can make her [symptoms] worse.  discussed dangerousness of alcohol with all her meds").

Billings' prior psychiatrist and her therapist also note Billings' struggle to abstain from alcohol. *See* JCMH Treatment Records (17F), Doc. 8-1, pp. 729 ("[Billings] reports . . . urges to drink"), 740 ("[Billings] reported getting intoxicated with her friends . . .  She reports drinking more periodically with friends. . . .  [Billings] reports craving alcohol more lately.").

[105] *See* Treatment Records (12F), Doc. 8-1, pp. 640 ("client is taking less [medication] than prescribed"), 645 ("[Billings] has been taking less of each [medication]"); JCMH Treatment Records (17F), Doc. 8-1, p. 740 ("[Billings] reports not taking her medication when she drinks;" "[Billings] reports increased depression and mood liability, likely due to the increased drinking, stress and not taking her medicine when drinking."); JCMH Treatment Records (20F), Doc. 8-1, pp. 857 ("Hasn't taken Seroquel in a month due to feeling too sleepy."); 860 ("trying to not take much meds due to pregnancy. . . . She doesn't take the Seroquel then;" "Med compliance is an issue as well."), 861 ("Has had varied med compliance."); JCMH Treatment Records (28F), Doc. 8-1, p. 1104 ("she reports she stops her Xanax only on the weekend, . . . she is drinking on the weekends now . . . she stopped the temapazpam.").

[106] *See* JCMH Treatment Records (20F), Doc. 8-1, pp. 860 ("[Billings has serious mental health symptoms at present . . . .  Med compliance is an issue as well. –Continue current meds for mood stabilization and anxiety."), 861–62 ("[Billings] has serious mental health symptoms at present and the risk of not taking meds on this client and the baby include suicidal gestures/attempts, worsening depression, mood swings and anxiety, and another psychiatric hospitalization."); JCMH Treatment Records (28F), Doc. 8-1, pp. 1069 ("when she misses her meds completely, she feels more moody, and depressed"), 1108 ("also, her alcohol addiction confounds the situation and can make her [symptoms] worse.  discussed dangerousness of alcohol with all her meds").

Billings also indicated in her March 2010 Disability Report that during her pregnancy she "had to change and discontinue . . . medications." March 2010 Disability Report (9E), Doc. 8-1, p. 337. As a "direct result" of the change, Billings "found [her] symptoms [were] worsening." *Id.*

[107] ALJ Decision, Doc. 8-1, p. 24.

Skirchak's opinion with the other expert opinions, vocational assessment, and functional reports in the record.  No other medical professional agreed with Dr. Skirchak that Billings suffers marked functional limitations or repeated episodes of decompensation as required by the "paragraph B" criteria for the listed mental impairments.[108]  Dr. Scher identified only mild difficulties in maintaining social functioning and, as discussed above, offered evidence from the record to suggest that Billings "is histrionic and exaggerates her symptoms."[109]  Dr. R. E. Schulman, a state agency psychological consultant, found that Billings' "[a]llegations of limitations [aren't] fully credible."[110]  Dr. Schulman and Dr. Norman S. Jessop, a second state agency psychological consultant, both identified a mixture of moderate and mild functional limitations.[111]   Both Dr. Schulman and Dr. Jessop concluded, however, that, despite these limitations, Billings is still "able to function at adequate levels and . . . capable of certain types of work."[112]  Dr. Jessop also added that Billings' mental diagnoses were "further stressed by a pregnancy whose effects should end at term."[113]  And Dr. Scher, Dr. Schulman, and Dr. Jessop found no evidence of episodes of decompensation.[114]

---

[108] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00 (listing the "paragraph B" criteria for measuring severity of functional limitations).

[109] Medical Source Statement (27F), Doc. 8-1, pp. 1060, 1064.

[110] December 2009 Psychiatric Review Technique (8F), Doc. 8-1, p. 607.

[111] *Id.* at 605; June 2010 Psychiatric Review Technique (13F), Doc. 8-1, p. 681.

[112] December 2009 Psychiatric Review Technique (8F), Doc. 8-1, p. 607; June 2010 Psychiatric Review Technique (13F), Doc. 8-1, p. 683.

[113] June 2010 Psychiatric Review Technique (13F), Doc. 8-1, p. 683.

[114] December 2009 Psychiatric Review Technique (8F), Doc. 8-1, p. 605; June 2010 Psychiatric Review Technique, Doc. 8-1, p. 681; Medical Source Statement (27F), Doc. 8-1, p. 1060.

The record also includes a vocational assessment and several functional reports that reinforce the ALJ's decision. A 2009 "Vocational Assessment Report" provides additional evidence that Billings' actual limitations do not interfere with her employability. The report characterizes Billings as "a quick learner . . . able to understand and follow directions without difficulty . . . to work independently" and "capable of routine office work and the operation of routinized equipment."[115] Similarly, two functional reports completed by Billings and one completed by her mother explain that Billings, though sometimes tired or unmotivated, is generally able to manage her home life, interact socially with family and close friends, and follow written and oral instructions. No objective medical evidence contradicts this evidence. Billings' treatment records do not mention specific limitations expected to last more than one year that preclude Billings from employment. And the fact that Billings occasionally receives assistance with daily activities does not undercut evidence that Billings possesses sufficient functional ability to perform personal and select professional tasks.[116]

The ALJ weighed this evidence and determined that he cannot fully credit Dr. Skirchak's opinion. The ALJ based his findings in the record. The Court finds the ALJ's decision and the record replete with evidence that a reasonable mind would acknowledge to discredit Dr. Skirchak's opinion. As such, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[117]

---

[115] Vocational Assessment and Eligibility Determination (3F), Doc. 8-1, pp. 403, 406.

[116] Here, the Court refuses to disturb the Commissioner's judgment and therefore rejects Billings' allegation that the ALJ failed to account for "all the assistance [P]laintiff was provided including that of her parents, as well as 'in-home care' from Johnson County Mental Health Center and regular help from her case manager, in addition to her therapist and her psychiatrist." Plaintiff's Brief In Support of Reversal, Doc. 15, p. 47.

[117] *Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.3d at 800).

## C.  Residual Functional Capacity Determination

Billings also contends that the ALJ erred at the end of step three in formulating her residual functional capacity.  Residual functional capacity considers physical, mental, and other impairments (such as pain) to measure the most a claimant can still do on a sustained basis despite their limitations.[118]  As noted above, the ALJ found that Billings has the residual functional capacity to perform certain sedentary work.  The ALJ qualified this assessment with the exception that Billings be "limited to simple, unskilled work with no contact with the general public and only occasional interaction with coworkers and supervisors.  In addition, she should have no more than moderate exposure to pulmonary irritants and normal access to restroom facilities."[119]  Here, Billings alleges without elaboration a single error, that "the ALJ did not consider the limitations described in the medical questionnaire completed by Dr. Skirchak and, instead, relied heavily upon the opinions of Dr. Scher with regard to the severity of plaintiff's functional limitations."[120]

The Court refuses to readdress the ALJ's evaluation of Dr. Skirchak's opinion.  For the reasons discussed above, the Court finds that the ALJ followed the proper procedure for weighing the opinions within the record and that substantial evidence supports the ALJ's determination to discredit Dr. Skirchak's opinion regarding the severity of Billings' limitations.

## D.  Representation of Billings' RFC to Vocational Expert

Finally, Billings argues that the ALJ erred at step five in relying on the vocational expert's testimony.  After the ALJ assessed Billings' residual functional capacity and determined

---

[118] 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

[119] ALJ Decision, Doc. 8-1, p. 19.

[120] Plaintiff's Brief In Support of Reversal, Doc. 15, pp. 48–49.

that she could not perform her past work, the burden shifted to the Commissioner to produce evidence of jobs in the national economy that Billings could perform.[121]  To satisfy this burden, the ALJ obtained the testimony of an impartial vocational expert.  The ALJ provided a hypothetical to the vocational expert, describing a person with the age, education, work experience, and residual functional capacity that he attributed to Billings.  The vocational expert determined that jobs exist in the national economy for such an individual.  But Billings asserts that the hypothetical that the ALJ presented to the vocational expert was defective.  In arguing that the ALJ's hypothetical was flawed, Billings does not indicate any specific circumstances that the ALJ incorrectly included or excluded.  Impliedly, however, Billings indicates that the hypothetical should have incorporated a residual functional capacity based on Dr. Skirchak's opinion.  Limitations based on such a hypothetical would "preclude all work in the national economy."[122]

Again, the Court will not belabor the ALJ's valid appraisal of Dr. Skirchak's opinion. Hypothetical questions posed to the vocational expert must reflect with precision a claimant's impairments, but only to the extent that they are shown by the evidentiary record.[123]   As explained above, the Court finds that the ALJ properly evaluated Billings' mental condition and provided adequate support from the record for his evaluation.  The hypothetical that the ALJ presented to the vocational expert accurately represented the ALJ's findings.  Accordingly, the ALJ did not err while obtaining or relying on the vocational expert's testimony.

---

[121] *See* 20 C.F.R. §§ 404.1560(c)(2) and 416.960(c)(2) ("In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, *we are responsible for providing evidence* that demonstrates that other work exists in significant numbers in the national economy that you can do").

[122] December 2011 Oral Hearing, Doc. 8-1, p. 88.

[123] *Decker v. Charter*, 86 F.3d 953, 955 (10th Cir. 1996).

**E.  Attorney's Fees and Court Costs**

Billings requests that this Court award her attorney's fees and court costs, although Billings fails to provide any basis for or documentation of the amount she is requesting.  Section 206(b) of the Act provides that "[w]henever a court renders a judgment favorable to a claimant . . . the court may determine and allow as part of its judgment a reasonable [attorney] fee  . . . not in excess of 25 percent of the past due benefits."[124]  This provision allows a court to award attorney fees in conjunction with a remand for further proceedings where a claimant ultimately recovers past due benefits.[125]  No provision of the Act explicitly permits costs to be charged against the Commissioner.  But, under certain circumstances, the Equal Access to Justice Act authorizes courts to "award to a prevailing party other than the United States fees and other expenses, in addition to [certain] costs."[126]  As stated above, this Court denies Billings' request to reverse and remand the ALJ's decision.  Without a favorable judgment, Billings is not eligible for payment of attorney's fees or court costs.  As such, Billings' request for fees and costs is denied.

---

[124] 42 U.S.C. § 406(b).

[125] *See Wrenn ex rel. Wrenn v. Astrue*, 525 F.3d 931, 933 (10th Cir. 2008).

[126] 28 U.S.C. § 2412(d)(1)(A); *see also Blue v. Colvin*, 2013 WL 1898552, at *1 (E.D. Okla. May 7, 2013) (awarding fees and costs under Equal Access to Justice Act to plaintiff who prevailed in district court on review of ALJ's denial of social security benefits).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 31st day of October, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE